IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL LEE ZBRANEK, SR | § | |
| TDCJ-CID NO. 1528625 | § | |
| v. | § | C.A. NO. C-11-369 |
| | § | |
| RICK THALER | § | |

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the Ellis Unit in Huntsville, Texas.

Proceeding pro se, he filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging

his conviction.  (D.E. 1).  Pending is Respondent's motion for summary judgment.  (D.E. 20).

Petitioner filed a response opposing this motion.  (D.E. 22).  For the reasons stated herein, it is

respectfully recommended that Respondent's motion for summary judgment be granted, and that

this habeas petition be dismissed.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.

§§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where

the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2000).

Petitioner was convicted in Live Oak County, Texas.  (D.E. 1, at 2).  Jurisdiction is, therefore,

proper in this Court.  28 U.S.C. § 124(b)(6).

## II.  FACTUAL BACKGROUND

On the morning of January 22, 2008, Live Oak County employees discovered that

someone had broken into two secured "Precinct 3" county buildings during the holiday weekend.

Zbranek v. State, No. 13-08-00534-CR, 2009 WL 2605909, at *1 (Tex. App. Aug. 26, 2009)

(unpublished).  Various equipment and power tools were reported missing.  Id.  Because

Petitioner had been suspected of committing similar burglaries in the area, investigating officers went to his residence shortly thereafter to ascertain whether he knew anything.  Id.  As they arrived at the residence, they were able to see several items matching the description of the stolen property in his truck bed.  Id.  Upon questioning, Petitioner consented to a search of the truck's interior.  Id. at *2.  Officers then found a number of other tools that were also reported missing from Precinct 3 as well as another nearby municipal facility.  Id.  When asked about why these stolen items were in his truck, Petitioner responded that he "guessed the gremlins put it in there."  Id.  The officers also discovered various screwdrivers and pliers, two pairs of gloves, a hat, a hands free headlight, and Petitioner's Craftsman toolbox.  Id.

Petitioner signed a property release and allowed the officers to take his truck and all of its contents to the sheriff's office.  Id.  Officers were then able to confirm that the items were county property.  Id.  They also opened the Craftsman toolbox and found a pry bar with red primer marks consistent with the paint used on the Precinct 3 buildings.  2 Reporter's Record ("RR") at 116.  No fingerprints were found on the pry bar or the Precinct 3 property discovered in the truck, but Petitioner told an investigator that the pry bar looked like one that he owned.  Zbranek, 2009 WL 2605909, at *2.

On May 15, 2008, Petitioner was indicted by a grand jury for burglary of a building.  Clerk's Record ("CR") at 2.  He pled not guilty to this offense.  Id.  at 43.  After a jury trial, Petitioner was found guilty on July 22, 2008.  Id.  The court sentenced him to ten years' imprisonment and ordered him to pay restitution as well as court costs.  Id.

### III.  PROCEDURAL BACKGROUND

On direct appeal, Petitioner argued that the evidence was factually insufficient to support his conviction because the prosecution had not shown that he entered the Precinct 3 buildings. Zbranek, 2009 WL 2605909, at *2.  On August 26, 2009, the Court of Appeals for the Thirteenth District of Texas affirmed the conviction.  Id. at *4.  His petition for discretionary review was refused on November 25, 2009, and he did not file a petition for writ of certiorari with the United States Supreme Court.  (D.E. 1, at 3).

Petitioner filed his state application for habeas corpus relief on July 16, 2010.  (D.E. 1, at 3).  He challenged his conviction on five grounds: (1) the evidence used against him was obtained from an unlawful arrest; (2) the prosecution failed to disclose favorable evidence; (3) the jury was unconstitutionally selected and impaneled; (4) his counsel rendered ineffective assistance; and (5) the evidence was not sufficient to support the conviction.  Ex parte Zbranek, App. No. WR-74,637-01, at 11-15.  On September 22, 2010, the Texas Court of Criminal Appeals denied this application without written order.  (D.E. 1, at 4).

### IV.  PETITIONER'S ALLEGATIONS

Petitioner advances five grounds for habeas relief.  (D.E. 1, at 7-9).  First, he claims that his conviction was obtained with the use of inadmissible evidence following an unlawful arrest. Id. at 7.  Second, he argues that the prosecution failed to inform him about favorable evidence. Id.  Third, he contends that the jury was unconstitutionally selected and impaneled.  Id. at 8. Fourth, he asserts that he was denied effective assistance of counsel.  Id.  Finally, he complains that the trial court failed to instruct the jury on the lesser-included offense of larceny.  Id. at 9.

## V.  DISCUSSION

Respondent urges that Petitioner's claims should be dismissed as time-barred.  (D.E. 20, at 1).  In the alternative, he also maintains that the claims are without merit.  Id.

**A.      Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  In addition, Rule 56 of the Federal Rules of Civil Procedure generally applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted)); see also Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus ....").

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts are prohibited from granting habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts." 28 U.S.C. § 2254(d); see also Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) ("hold[ing] that review under 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (discussing § 2254(d)).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)). The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-

04).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one.

Id. (internal citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's "decision" and not the written opinion explaining that decision.'"  St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citing Neal, 286 F.3d at 246).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  Santellan v. Cockrell, 271 F.3d 190, 193 (5th

5

Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court]

precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts

them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (per curiam) (quoting Early v. Packer, 537

U.S. 3, 8 (2002)); see also Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 785 (2011)

(reaffirming that "§ 2254(d) does not require a state court to give reasons before its decision can

be deemed to have been 'adjudicated on the merits'").

Absent a direct conflict with Supreme Court authority, habeas relief is available only if a

state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th

Cir. 2000).  Indeed, AEDPA's deferential standard limits the federal court role in the review of

state convictions:

> [Section 2254(d)] preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It
> goes no farther.  Section 2254(d) reflects the view that habeas
> corpus is a "guard against extreme malfunction in the state
> criminal justice systems," not a substitute for ordinary error
> correction through appeal....  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

Harrington, 131 S. Ct. at 786-87 (citation omitted).  The Fifth Circuit has further explained that a

federal district court "must reverse when [it] conclude[s] that the state court decision applies the

correct legal rule to a given set of facts in a manner that is so patently incorrect as to be

'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary

to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that

the state court reached and not on whether the state court considered and discussed every angle

6

of evidence."  <u>Neal</u>, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  <u>Morrow</u>, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  <u>Id.</u> The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  <u>Id.</u> (citing <u>Valdez v. Cockrell</u>, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  <u>See</u> <u>Valdez</u>, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.    Petitioner's Claim Was Filed Outside Of The Limitations Period.**

AEDPA provides a one-year limitations period for filing a federal habeas petition in district court by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  That period runs from the latest of four alternative dates:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.  Nevertheless, certain actions will toll the limitations period.  For example, while a prisoner seeks state habeas review, the AEDPA one-year period will be tolled:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

There are two separate and alternative ways a conviction can become "final" within the meaning of § 2244(d)(1)(A).  In Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003), the Fifth Circuit held that "[i]f the conviction does not become final by the conclusion of direct review, it becomes final by 'the expiration of the time for seeking such review.'"  Id. at 694 (citing 28 U.S.C. § 2244(d)(1)(A)).  As the Fifth Circuit explained, both federal and state court filing deadlines determine when the conclusion of direct review occurs and the conviction becomes final:

[The time period for seeking direct review] includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort.  If the defendant stops the appeals process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires.

Id.; see also Jimenez v. Quarterman, 555 U.S. 113, 119-20 (2009) ("[D]irect review cannot conclude for purposes of § 2244(d)(1)(A) until the 'availability of direct appeal to the state courts,' and to this Court, has been exhausted.  Until that time, the 'process of direct review' has

not 'com[e] to an end' and 'a presumption of finality and legality' cannot yet have 'attache[d] to the conviction and sentence.'") (citations omitted).  Therefore, the petitioner's choice of actions during the appeals process determines when § 2244(d)(1)(A) triggers AEDPA's one-year limitations period.

Respondent claims, and Petitioner does not deny, that § 2244(d)(1)(A) is the only pertinent limitation.  (D.E. 20, at 8).  Petitioner also does not suggest that the State created any impediment to his claim, the record does not reveal any such impediment, and therefore § 2244(d)(1)(B) is irrelevant.  Nor has he advanced any argument for why or how any recent Supreme Court decisions have acknowledged any rights that he now claims, thereby rendering § 2244(d)(1)(C) inapplicable.  Furthermore, because he does not base this petition on any new facts discovered within one year of filing this petition; therefore, § 2244(d)(1)(D) does not apply.

The record demonstrates that Petitioner failed to file this petition for federal habeas review within one year of the date the AEDPA limitations period began to run.  His petition for discretionary review was refused on November 25, 2009 by the Texas Court of Criminal Appeals.  (D.E. 1, at 3).  Because Petitioner did not submit a petition for a writ of certiorari to the United States Supreme Court, the limitations period began to run ninety days later on February 23, 2010.  See Foreman v. Dretke, 383 F.3d 336, 340 (5th Cir. 2004) ("[petitioner]'s conviction thus became final for AEDPA purposes 90 days after the [Texas Court of Criminal Appeals] denied his PDR") (citing Roberts, 319 F.3d at 694).  As a result, AEDPA's one-year limitations period established a deadline of February 23, 2011 for Petitioner to either file a federal habeas petition or toll the limitations period by filing a state habeas application.

On July 16, 2010, Petitioner filed an intervening state habeas application.  (D.E. 1, at 3).

This application was denied by the Texas Court of Criminal Appeals on September 22, 2010, id. at 4, thereby allowing him to toll the AEDPA deadline by sixty-eight days to May 2, 2011.  No other state habeas application was submitted.  Petitioner filed this federal habeas petition on July 11, 2011–more than two months after the AEDPA deadline elapsed.  Id. at 9.  Therefore, it is respectfully recommended that this petition was filed outside the limitations period.

**C.      Petitioner Is Not Entitled To Equitable Tolling.**

Equitable tolling of the limitations period applies principally where the petitioner is actively misled by the respondent about the petition, or is prevented in some extraordinary way from asserting his rights.  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (per curiam) (citation omitted).  "To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  The doctrine is available "'in rare and exceptional circumstances' where it is necessary to 'preserve[ ] a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'"  Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)).  The Supreme Court has reminded that when evaluating claims for equitable tolling, habeas courts must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case."  Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2263 (2010).

A careful review of the record does not reveal any potentially "rare and exceptional" circumstances warranting equitable tolling.  Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000)

10

(citations omitted).  Although Petitioner has submitted administrative grievances detailing his difficulties obtaining legal materials from the law library while he was incarcerated at the Goree Unit, (D.E. 11), Respondent asserts that these problems resulted from his failure to follow the library's instructions.  (D.E. 20, at 11).  Indeed, the request forms returned by the library indicate Petitioner was not granted legal supplies because (1) he did not give complete page citations for the cases he wanted; (2) TDCJ policy prohibited direct law library access; and (3) he failed to explain why he needed both § 1983 and § 2254 forms.  (D.E. 11, at 8-11).  Given that Petitioner is at fault for not properly submitting valid requests to the law library, he cannot use the library's refusal to give him supplies as an occasion for equitable tolling.  See In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam) ("A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify.") (citing Felder, 204 F.3d at 174).

Additionally, Respondent observes that Petitioner complained about his inability to obtain legal supplies before he had even filed his state application for habeas relief.  Id. at 6-7.  Nothing in the record indicates that he continued to experience such problems after pursuing his administrative remedies.  Consequently, even if the law library delayed him from conducting legal research at that time, he still had approximately seven months to file this federal habeas petition from the date that his state habeas application was refused on September 22, 2010 to May 2, 2011, the date that the AEDPA limitations deadline elapsed.

Finally, the fact that Petitioner mistakenly sent his § 2254 petition to the Fifth Circuit instead of sending it to this Court does not warrant equitable tolling.  (D.E. 22, at 2).  The Fifth Circuit has explicitly foreclosed using "excusable neglect" or "ignorance of the law" as grounds

for justifying equitable tolling.  <u>Fierro</u>, 294 F.3d at 682.  Accordingly, it is respectfully

recommended that Petitioner is not entitled to equitable tolling because he fails to demonstrate

that he had diligently pursued his rights.  <u>Lawrence</u>, 549 U.S. at 336 (citation omitted).

**D.      Petitioner's Fourth Amendment Claim Is Not Cognizable On Federal Habeas Review.**

Petitioner claims that he was convicted with illegally obtained evidence in violation of

the Fourth Amendment.  (D.E. 1, at 7; D.E. 22, at 9-10).  He appears to argue that the

incriminating pry bar found inside the seized Craftsman toolbox was improperly admitted into

evidence because officers did not open and inventory the contents of the toolbox in his presence.

Petitioner also complains that the gloves found inside his truck did not belong to him, and he

maintains that DNA testing was necessary before those items could be presented as evidence

against him.  Respondent counters that any claim premised on the Fourth Amendment right

against unlawful searches and seizures would be not be cognizable as a matter of law because

Petitioner has not shown or even alleged that the state court proceeding inadequately protected

his Fourth Amendment rights.  (D.E. 20, at 18).

The Fourth Amendment provides the right to be free from "unreasonable searches and

seizures."  U.S. Const. amend. IV.  In a direct appeal, the exclusionary rule can be applied to

overturn a state conviction when illegally obtained evidence was presented at trial.  <u>Mapp v.</u>

<u>Ohio</u>, 367 U.S. 643, 655-660 (1961).  However, the remedial role of the exclusionary rule is

greatly diminished on collateral review.  In <u>Stone v. Powell</u>, the Supreme Court concluded that

"where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S.

12

465, 494 (1976).  So long as "a state provides the processes whereby a defendant can obtain full

and fair litigation of a fourth amendment claim," the Fifth Circuit applies the habeas bar

enunciated in <u>Stone</u> regardless of "whether or not the defendant employs those processes."

<u>Caver v. Alabama</u>, 577 F.2d 1188, 1192 (5th Cir. 1978).  As a corollary, the Fifth Circuit has

further elaborated that "'in the absence of allegations that the processes provided by a state to

fully and fairly litigated fourth amendment claims are routinely or systematically applied in such

a way as to prevent the actual litigation of fourth amendment claims on their merits,' *Stone*

forecloses review."  <u>Moreno v. Dretke</u>, 450 F.3d 158, 167 (5th Cir. 2006) (quoting <u>Williams v.

Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980)).

      Petitioner has neither pled nor proved that the subject state court proceeding did not

present him a "fair opportunity" to litigate any unlawful search and seizure claim he now raises.

Moreover, nothing in the record indicates that the processes available to him were inadequate

such that the exclusionary rule should be applied.  Therefore, it is respectfully recommended that

<u>Stone</u> precludes federal habeas review of Petitioner's Fourth Amendment claim.[1]

## E.    The Prosecution Did Not Commit A <u>Brady</u> Violation.

      Petitioner next claims that the prosecution failed to inform him about exculpatory

evidence.  He specifically references the prosecution's failure to provide (1) additional

photographs of the crime scene and the stolen property; (2) the names of witnesses who saw the

crime; (3) evidence regarding the cost of the stolen property; (4) the names of witnesses who

---

[1] Petitioner also suggests that he was subject to an unlawful arrest, which operated to render any attendant seizure of evidence illegal as well.  (D.E. 1, at 7).  The record, however, indicates that the stolen property in his truck bed was in plain view, and he consented to all searches of his property at all times.  It also appears that Petitioner was not actually arrested on the underlying burglary charge until well after the initial searches were conducted at his residence and his truck was already impounded.  2 RR at 161; (D.E. 22, at 9, 34).  In addition, he has failed to explain how his arrest was unlawful.

would have supported his belief that "gremlins" placed the stolen property into his possession; and (5) call as a witness a fellow inmate he encountered while in jail whom he believes was the actual culprit. (D.E. 1, at 7). Respondent argues that this claim is without merit. (D.E. 20, at 19).

In Brady v. Maryland, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To establish a Brady violation, a defendant "'must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material' to his guilt or punishment." Mahler v. Kaylo, 537 F.3d 494, 500 (5th Cir. 2008) (citations omitted). If even one of these elements is lacking, inquiry into the others is unnecessary and the claim fails. See Strickler v. Greene, 527 U.S. 263, 296 (1999) (no Brady violation where petitioner establishes only two out of the three components); Banks v. Thaler, 583 F.3d 295, 300 (5th Cir. 2009) ("Because Brady's materiality prong is *not* satisfied, the habeas relief for [petitioner's] conviction is VACATED.") (emphasis in original). Finally, the petitioner must show that he exercised "reasonable diligence" in seeking the exculpatory evidence. See Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002) ("Brady does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence.") (citation omitted); United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) ("This Court has held that '[w]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim.'") (quoting

14

United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980)).

Petitioner has not demonstrated that the prosecution concealed favorable evidence from him or his counsel.  Instead, he appears to complain that the prosecution did not advocate on his behalf by introducing potentially exculpatory evidence at trial.  Absent actual suppression of evidence, however, the mere failure to assist a defendant would not constitute Brady violation as a matter of law.  Even if all the relevant crime scene photographs were not introduced at trial, he has not alleged that the remaining photographs were hidden or otherwise unavailable to him.  In addition, Petitioner's assertion that the prosecution failed to present evidence regarding the cost of the stolen items is contradicted by the record.  A Live Oak County employee testified multiple times during the trial that he spent $3,800 to replace the stolen equipment after the burglary.  2 RR at 35, 41-42, 216.

Nor does Petitioner allege that the prosecution was ever aware of any witnesses who saw the underlying burglary or could have given exculpatory testimony.  Although he continues to speculate that there were missing witnesses who should have been called at trial, he has yet to identify anyone and show that they were unavailable to him after exercising reasonable diligence.  (D.E. 22, at 15).  It is also difficult to fathom the existence of any credible witnesses who could have supported his belief that "gremlins" were actually responsible for the crime.[2] Furthermore, the fact that he admits to encountering and therefore knowing about the supposed burglar while in jail precludes him from premising any Brady claim on this basis.  Because

---

[2] In light of the numerous references to "gremlins" that Petitioner has made in his petition and response brief, see, e.g., (D.E. 1, at 7, 9; D.E. 22, at 34), it is unclear whether he seriously believes that these fictional creatures played a part in the underlying burglary.  In an apparent attempt to either prove his contentions or mock the Court, he has attached a Progressive Motorcycle Insurance advertisement featuring gremlins in his response brief. (D.E. 22, at 32).

Petitioner has not established each required element of a <u>Brady</u> violation, it is respectfully recommended that this claim be dismissed.

**F.      Petitioner's Claim That The Jury Was Biased Is Without Merit.**

Petitioner also contends the jury that convicted him was unconstitutionally impaneled because they had prior knowledge of the case.  (D.E. 1, at 8).  He alleges that a police report was placed in the local newspaper, allowing a number of jurors to be familiar with the facts of the underlying burglary.  <u>Id.</u>  Respondent maintains that this claim is also without merit.  (D.E. 22, at 21).

The Sixth Amendment secures the right to a public trial by an impartial jury.  U.S. Const. Amend. VI; <u>see also</u> <u>Virgil v. Dretke</u>, 446 F.3d 598, 605 (5th Cir. 2006) (explaining that the Sixth Amendment provides the basis for the right to trial by an impartial decisionmaker) (citations omitted).  A juror's bias may be actual or implied–"that is, it may be bias in fact or bias conclusively presumed as [a] matter of law."  <u>United States v. Wood</u>, 299 U.S. 123, 133 (1936); <u>accord</u> <u>Solis v. Cockrell</u>, 342 F.3d 392, 395 (5th Cir. 2003) (quoting <u>Wood</u>).  The Fifth Circuit has explained that "[a]ctual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause."  <u>Hatten v. Quarterman</u>, 570 F.3d 595, 600 (5th Cir. 2009) (citation omitted).  A venire member may be excluded for cause where "the prospective 'juror's views would prevent or substantially impair the performance of his duties in accordance with his instructions and his oath.'"  <u>Soria v. Johnson</u>, 207 F.3d 232, 242 (5th Cir. 2000) (quoting <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985)).  On the other hand, circumstances in which a juror would be presumed biased as a matter of law "'might include a revelation that the juror is

an actual employee of the prosecuting agency, that the juror is a close relative of one of the

participants in the trial or the criminal transaction, or that the juror was a witness or somehow

involved in the criminal transaction.'" Solis, 342 F.3d at 395 (quoting Smith v. Phillips, 455

U.S. 209, 222 (1982) (O'Connor, J., concurring)).  For all jury trials, there is an initial

presumption of jury impartiality.  United States v. O'Keefe, 722 F.2d 1175, 1179 (5th Cir. 1983)

(citation omitted).

      In the context of jury impartiality challenges due to extensive pretrial media coverage of

the charged crime, the Supreme Court has not required that prospective jurors be ignorant of the

underlying incident:

> It is not required ... that the jurors be totally ignorant of the facts
> and issues involved.  In these days of swift, widespread and
> diverse methods of communication, an important case can be
> expected to arouse the interest of the public in the vicinity, and
> scarcely any of those best qualified to serve as jurors will not have
> formed some impression or opinion as to the merits of the case.
> This is particularly true in criminal cases.  To hold that the mere
> existence of any preconceived notion as to the guilt or innocence
> of an accused, without more, is sufficient to rebut the presumption
> of a prospective juror's impartiality would be to establish an
> impossible standard.  It is sufficient if the juror can lay aside his
> impression or opinion and render a verdict based on the evidence
> presented in court.

Irvin v. Dowd, 366 U.S. 717, 722-23 (1961) (citations omitted).  When a particular juror's

impartiality has been questioned, "[t]he issue becomes whether exposure to media publicity will

preclude the individual from returning a verdict based solely on the person's application of the

law as stated to the evidence presented." Bell v. Lynaugh, 828 F.2d 1085, 1093 (5th Cir. 1987)

(citation omitted).  In extreme circumstances "where there has been inherently prejudicial

publicity such as to make the possibility of prejudice highly likely or almost unavoidable," a

showing of actual prejudice is not required and bias can be presumed.  <u>Calley v. Callaway</u>, 519

F.2d 184, 204 (5th Cir. 1975) (citing <u>Estes v. Texas</u>, 381 U.S. 532, 542-43 (1966)).

      The state court's finding that a juror was impartial is accorded the "presumption of

correctness" given to questions of historical fact.  <u>Patton v. Yount</u>, 467 U.S. 1025, 1036 (1984);

<u>see</u> <u>also</u> <u>Valdez</u>, 274 F.3d at 948 (§ 2254(e)(1)'s presumption of correctness applies to findings

of fact implicit in the habeas court's conclusions).  This presumption also applies to implicit

findings that there was no actual jury bias.  <u>See</u> <u>Jones v. Butler</u>, 864 F.2d 348, 362 (5th Cir.

1988) (denial of a juror challenge for cause constituted a factual finding of impartiality even

though the court made no express finding of non-bias).  Nevertheless, whether the jury as a

whole was impartial is a mixed question of law and fact, <u>Irvin</u>, 366 U.S. at 723, which must be

reviewed through the lens of § 2254(d)(1)'s unreasonable application prong.  <u>Valdez</u>, 274 F.3d at

948.

      Petitioner has not demonstrated that he is entitled to habeas relief on the basis of actual

juror bias.  During voir dire, a number of venire members testified that they had some prior

knowledge about the burglary of the Precinct 3 buildings.  1 RR at 39-40.  Another prospective

juror mentioned that he had served on the grand jury.  <u>Id.</u> at 39.  However, these venire members

were not selected for the petit jury.  CR at 20.

      Petitioner has also failed to show that the media coverage of the burglary–to wit, a front

page article in the local newspaper discussing the police report entitled "Suspect Alleges

'Gremlins' Left Stolen Goods In His Vehicle," which was later displayed on the internet–created

an impermissible risk that the impaneled jurors would be unable to honor their oath.[3]  (D.E. 22,

at 21-22); see also United States v. Collins, 472 F.2d 1017, 1020 (5th Cir. 1972) (two newspaper

articles referring to the government's general campaign against narcotic suspects did not

prejudice defendant's rights).  The quality and quantity of media coverage of the burglary and

the trial is a far cry from the media-circuses that courts have previously found problematic.  See

Skilling v. United States, __ U.S. __, 130 S. Ct. 2896, 2913-2915 (2010) (collecting cases where

convictions were overturned due to the corrupting influence of press coverage).  Due to the

sporadic pretrial press coverage, jury bias cannot be presumed.  See Busby v. Dretke, 359 F.3d

708, 726 (5th Cir. 2004) (the fact that local newspapers ran more than a dozen combined articles

on petitioner's capital murder case did not warrant the presumption that voir dire was incapable

of producing a proper jury).  Accordingly, it is respectfully recommended that Petitioner's claim

of jury bias be dismissed.[4]

---

[3] Petitioner claims that there were other articles printed by the local newspaper concerning his criminal prosecution, including headlines that read "Grand Jury Returns Seven Indictments, Teen Goes On Shopping Spree With Valuable Silver Coins" and "Zbranek Refuses Plea Agreement And Ends Up With Twice As Much Prison Time."  (D.E. 22, at 22).  Given that he was only indicted on one count of burglary, the former headline does not appear to deal with his criminal case.  CR at 2.  The latter headline purports to describe the jury's verdict; therefore, it would necessarily have been published only after the jurors finished their deliberations.  As a consequence, neither of these headlines are relevant for the purposes of determining whether any press coverage could have biased the jurors against him.

[4] Within Petitioner's jury bias claim, he includes an additional argument that some of the evidence presented at trial has not been linked to him.  Specifically, he contends that he cannot be responsible for the items that were not recovered from his truck or residence.  So understood, this is a dispute concerning the admissibility of evidence pursuant to Texas rules of evidence.  See Tex. R. Evid. 101(b) ("Except as otherwise provided by statute, these rules govern civil and criminal proceedings ... in all courts of Texas, except small claims courts.").  To the extent that this state law claim has been exhausted, it is nevertheless not cognizable as a matter of federal habeas law because it is not the role of a federal court to reexamine state court determinations on state law questions.  See Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984) (federal courts "do not sit as a super state supreme court to review error under state law") (citation omitted).  It is therefore also respectfully recommended that this claim be dismissed.

**G.      Petitioner Did Not Receive Ineffective Assistance Of Counsel.**

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient; and (2) the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either.  Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).  The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006).

In order to show counsel's performance was deficient, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) ("strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting Strickland, 466 U.S. at 689).

20

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993). In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Pursuant to the second prong of the Strickland two-part test, Petitioner may not simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel. Strickland, 466 U.S. at 693. Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial. See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance) (citations omitted).

Petitioner has the burden of proof under the Strickland test. See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in a federal habeas proceeding). In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief. Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000)

21

("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not set forth any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, Petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under Strickland, but] ... whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance] claim.") (emphasis in original).

Petitioner charges his trial counsel was ineffective by (1) allowing the jury to be exposed to evidence implicating him in similar burglaries that he was not being charged with committing; (2) failing to call as witnesses his landlord and the officer who drove his truck to the sheriff's office to be inventoried; and (3) not insisting that the prosecution prove his guilt with additional photographic and DNA evidence.  (D.E. 1, at 8).  Presumably, he believes that these alleged errors resulted in his conviction.  Respondent argues that Petitioner's counsel was not ineffective.  (D.E. 20, at 23).  Because state habeas relief was denied without an opinion, it is assumed that the state court applied the proper "clearly established Federal law."  Schaetzle, 343 F.3d at 443-44.  Consequently, the analysis turns on whether the state court's decision was "contrary to" or "an objectively unreasonable application" of that federal law.  Id.

>   a)   **Trial counsel was not ineffective for allowing the prosecution to present contextual information of other burglaries in the area.**

Chief among Petitioner's concerns are two instances during trial in which he believes the prosecution was allowed to unfairly suggest that he was responsible for other past burglaries. The first occurred when an investigator was asked by the prosecutor why he went to Petitioner's house after the burglary was reported.  2 RR at 172.  The investigator replied that he was suspected of committing prior burglaries, including an earlier break-in at Precinct 3.  Id. at 172-73.  No further testimony about Petitioner's connection with these prior burglaries was given for the remainder of the trial.  Despite this passing remark, his counsel moved for a mistrial because of this testimony.  Id. at 179.  This motion was denied by the trial court.  Id.  Given that the record contradicts Petitioner's allegation that his counsel simply allowed a witness to give this damaging testimony, he cannot claim that his counsel was ineffective on this basis.

Petitioner also protests that photographs of past burglaries were admitted into evidence. Out of all the photographs submitted to the jury, only Exhibit 17 and Exhibit 24 fit this description.  Exhibit 17 is a picture of a grease gun with the inscription "Waste Water 40."  3 RR at Ex. 17.  At trial, Investigator Charlie Stroleny testified that he found the grease gun in Petitioner's truck, and he later determined that it was the same grease gun reported missing from a water plant in the nearby city of George West, Texas.  2 RR at 142-43.  Exhibit 24 is a picture of the entrance to a Precinct 3 building.  3 RR at Ex. 24.  Investigator Stroleny also testified that he had taken this photograph on July 9, 2007 after a burglary was reported, and the picture was used to show the items that were not stolen during that earlier burglary.  2 RR at 139-41.

Because Petitioner does not specify how his attorney could have kept these exhibits from being admitted as evidence, it is unclear that his counsel was ineffective by failing to object.

Moreover, he does not contest the remaining exhibits, which include pictures of the crime scene, his property, and the missing items from Precinct 3 found in his possession. Even without Exhibit 17 and Exhibit 24, substantial incriminating evidence linking him to the burglary was available to the jury. Therefore, Petitioner has failed to carry his burden of showing that there was a reasonable probability that the verdict would have been different. Strickland, 466 U.S. at 694. Accordingly, it is respectfully recommended that Petitioner's trial counsel did not provide ineffective assistance by allowing the prosecution to provide information about other past burglaries in the area.

       b)      **Trial counsel was not ineffective for failing to call witnesses.**

Petitioner also claims that his counsel was ineffective because he had not called his landlord or the officer who drove his truck to the sheriff's office. (D.E. 1, at 8). Aside from alleging that this officer was later fired, he supplies no other details about what kind of testimony these witnesses would give or how they would have helped his defense.

The Fifth Circuit has long disfavored entertaining claims alleging that counsel was ineffective due to the failure to call witnesses at trial "'because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir. 2007) (quoting Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981)). There is even greater cause for caution when the only evidence concerning a missing witness' testimony comes from the defendant. Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986) (citation omitted). In order to demonstrate the prejudice prong under Strickland, the petitioner therefore "must show not only that this testimony would have been favorable, but also that the witness would have

testified at trial."  Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) (citations omitted).

Because Petitioner has not shown that these witnesses were willing to give favorable testimony at trial in any of his filings to the Court, he has failed to demonstrate the requisite Strickland prejudice.  See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (failure of petitioner to show that a potential eyewitness was willing to give favorable testimony at trial precluded a claim of ineffective assistance) (citation omitted).  Therefore, it is respectfully recommended that Petitioner's claim that his trial counsel was ineffective for failing to call certain witnesses to testify is without merit.

> ### c)  Trial counsel was not ineffective for failing to force the prosecution to present additional photographic and DNA evidence.

Petitioner is also distressed that his counsel did not somehow require the prosecution to supplement their evidence with additional proof.  (D.E. 1, at 8).  In particular, he believes that the prosecution should have used DNA evidence to link the gloves found in his truck to him.  Id. He also suggests that the prosecution should have submitted into evidence pictures of the investigating officers at the crime scene, apparently to prove that they were actually there.  Id.

In criminal trials, the prosecution must carry its burden of proving the defendant guilty beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 315 (1979); see also Virgil, 446 F.3d at 605 ("Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker.").  This does not entitle defendants to be proven guilty beyond any doubt.  Thus, there is no general requirement that the prosecution must prove a defendant guilty using DNA evidence.  Nor is an officer who testifies that he conducted an investigation at the crime scene also required to be photographed during the investigation.

25

Counsel cannot be regarded as deficient for not requiring the prosecution to prove more than is necessary to obtain a conviction.  Furthermore, defense attorneys should not be forced to encourage the prosecution to disclose additional incriminating evidence at trial because such a requirement would be inimical to the defendant's interests.  If the evidence appears insufficient to produce a guilty verdict, then counsel should move for a directed verdict rather than demand the production of more evidence.  Such a motion was made by Petitioner's counsel and denied by the trial court.  2 RR at 175-76.  Accordingly, it is respectfully recommended that Petitioner's counsel did not render ineffective assistance for failing to insist that additional photographic and DNA evidence be dismissed.[5]

## H.    Petitioner's Lesser-Included Offense Claim Is Not Cognizable On Federal Habeas Review.

Petitioner's last articulated ground for habeas relief relates to the trial court's failure to grant a jury instruction for the lesser-included offense of larceny.  (D.E. 1, at 9).  The Fifth Circuit, however, does not regard the failure to give an instruction on a lesser-included offense as raising a federal constitutional issue.  Creel v. Johnson, 162 F.3d 385, 390 (5th Cir. 1998) (citations omitted).  Therefore, deference is given to the state court interpretation of its law for whether a lesser-included offense instruction is warranted.  Id. at 391 (citing Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988)).  Accordingly, it is respectfully recommended that his lesser-included offense claim is not cognizable.

---

[5] Surprisingly, Petitioner speaks highly of his trial counsel's skill in his response brief, opining that his attorney "is true to the laws of this land" and declaring that he "would try to hire him if there was ever another need for counsel."  (D.E. 22, at 26).  He even states that he "would recommend him to others."  Id.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious." Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2254 petitioner to demonstrate that "reasonable jurists could debate whether ... the [petition] should have been resolved in a different manner or that the issues presented ... deserve[d] encouragement to proceed further."  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show

27

both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate this denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed. <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 20), be granted, and that this habeas petition, (D.E. 1), be dismissed. Additionally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 28th day of March 2012.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).